## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ASBESTOS LITIGATION | ) | |
| MARK E. HILLYER and CAROL | ) | |
| HILLYER, his wife, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-378-GMS-SRF |
| | ) | |
| ABB, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

## I.     INTRODUCTION

This Report and Recommendation is limited to six pending motions for summary

judgment in this asbestos-related personal injury action.  The motions were filed by Defendants,

ABB, Inc.[1] ("ABB" or "ITE") (D.I. 127), CBS Corporation[2] ("CBS" or "Westinghouse") (D.I.

106), BW/IP, Inc. ("BW/IP") (D.I. 108), Eaton Corporation[3] ("Eaton" or "Cutler-Hammer")

(D.I. 109), Union Carbide Corporation ("Union Carbide") (D.I. 121), and Gould Electronics, Inc.

("Gould") (D.I. 123) (collectively "Defendants").[4]  As indicated in the chart, *infra*, and for the

reasons set forth below, the court recommends granting Defendants' motions for summary

judgment.

---

[1] ITE Circuit Breakers, Inc. is a predecessor company of ABB, Inc. for certain products.  (D.I. 128 at 1)

[2] CBS Corporation is sued as a successor-in-interest to Westinghouse Electric Corporation.  (D.I. 107 at 1)

[3] Eaton Corporation is a successor-in-interest to Cutler-Hammer, Inc.  (D.I. 110 at 1)

[4] After filing a motion for summary judgment, Defendant Siemens Industry, Inc. ("Siemens") was dismissed from this action on July 28, 2016, rendering the motion moot.  (D.I. 114; D.I. 158)

| Defendant | Motion for Summary Judgment |
|---|---|
| ABB, Inc. | GRANT |
| CBS Corporation | GRANT |
| BW/IP, Inc. | GRANT |
| Eaton Corporation | GRANT |
| Union Carbide Corporation | GRANT |
| Gould Electronics, Inc. | GRANT |

## II.   BACKGROUND

### A.  Procedural History

Mark and Carol Hillyer ("Plaintiffs") filed this asbestos action in the Delaware Superior Court against multiple defendants on March 23, 2015, asserting claims regarding Mr. Hillyer's alleged harmful exposure to asbestos.[5] (D.I. 1, Ex. 1) Defendant Crane Co. removed the action to this court on May 11, 2015. (D.I. 1) CBS, BW/IP, Eaton, Union Carbide, and Gould filed motions for summary judgment on June 17, 2016. (D.I. 106, 108, 109, 121, 123) ABB filed its motion on June 21, 2016. (D.I. 127) Plaintiffs did not respond to these motions. On July 6, 2016, counsel for CBS, Eaton, and Union Carbide sent a letter to the court seeking dismissal for Plaintiffs' failure to oppose the summary judgment motions.[6] (D.I. 138) Counsel for BW/IP, Gould, and ABB filed similar letters on July 11, 2016, July 14, 2016, and July 18, 2016, respectively. (D.I. 146, 148, 153)

### B.  Facts

#### 1.  Plaintiffs' alleged exposure history

---

[5] Plaintiffs also assert a loss of consortium claim on behalf of Mrs. Hillyer, which is derivative of Mr. Hillyer's claims. (D.I. 1, Ex. 1 at ¶¶ 32–33)

[6] Defendants, Mine Safety Appliances Company, Copes-Vulcan, Inc., Spirax Sarco, Inc., Crane Co., and Air & Liquid Systems Corporation also filed motions for summary judgment. (D.I. 112, 116, 118, 125, 129) Those motions are sub judice pending oral argument on August 17, 2016.

Plaintiffs allege that Mr. Hillyer developed mesothelioma as a result of exposure to asbestos-containing products during the course of his employment with the U.S. Navy from 1967 to 1997.[7] (D.I. 1, Ex. 1 at ¶ 3) Plaintiffs contend that Mr. Hillyer was injured due to exposure to asbestos-containing products that Defendants manufactured, sold, distributed, or installed. (*Id.*, Ex. 1 at ¶ 10) Accordingly, Plaintiffs assert negligence, punitive damages, strict liability, and loss of consortium claims. (*Id.*, Ex. 1)

Mr. Hillyer was deposed on May 20, 2015 and May 21, 2015. Plaintiffs did not produce any other fact or product identification witnesses for deposition.[8] Mr. Hillyer testified that he enlisted in the Navy on August 14, 1967. (5/20/15 Video Tr. at 18:7–9) After boot camp, he went to the Great Lakes training center for machinist's mate A school. (*Id.* at 18:1–6) His training there consisted of classroom and practical experience taking apart equipment like pumps, valves, lube oil purifiers, and inspection covers, from which Mr. Hillyer does not believe he was exposed to asbestos. (*Id.* at 18:13–19:9) In 1968, he was stationed at a training unit in Idaho Falls, Idaho for training with the S1W submarine prototype. (*Id.* at 20:5–14)

Mr. Hillyer then moved between different training centers until he was stationed on the USS George Washington Carver from 1970 to 1974. (*Id.* at 19:10–23:3) There, he worked as a

---

[7] Plaintiffs allege that exposure occurred while working for the U.S. Navy as: (1) a student in Great Lakes, IL from 1967 to 1968; (2) a student in Mare Island, CA in 1968; (3) a student in Idaho Falls, ID from 1968 to 1969; (4) a student in Groton, CT from 1969 to 1970; (5) a machinist mate in Groton, CT from 1970 to 1974; (6) a staff supervisor in Idaho Falls, ID from 1974 to 1978; (7) a machinist mate in Portsmouth, NH from 1978 to 1983; (8) a staff supervisor in Groton, CT from 1983 to 1986; (9) a machinist mate in Groton, CT from 1986 to 1991; (10) a staff supervisor in Windsor, CT from 1991 to 1993; and (11) a machinist mate in Windsor, CT from 1996 to 1997. (D.I. 1, Ex. 1 at ¶ 3)

[8] The deadline to complete depositions of all plaintiffs alleging exposure was May 20, 2015. (D.I. 55 at ¶ 4(c)(iii); D.I. 128 at 1) The deadline to complete depositions of all co-worker, product identification, and other exposure testimony witnesses was November 6, 2015. (D.I. 55 at ¶ 4(c)(iv); D.I. 128 at 1) The deadline to complete fact discovery was April 29, 2016. (D.I. 82 at ¶ 3; D.I. 128 at 1)

3

machinist's mate "in the machinery division in the operation, maintenance, preservation, and cleanliness of reactor plant and steam plant systems and components." (*Id.* at 22:1–5) The reactor plant heated water to create steam for the vessel's boilers. (*Id.* at 23:5–15) On the USS George Washington Carver, Mr. Hillyer conducted preventative maintenance to main engines and turbine generators, and corrective maintenance when repairs were required. (*Id.* at 24:10–25:14) He believes he was exposed to asbestos while conducting maintenance because many of the parts had asbestos-containing gaskets or components that gave off dust and residue. (*Id.* at 26:5–24)

Next, Mr. Hillyer went to the nuclear power training unit in Idaho Falls, Idaho to work on the S5G prototype as an instructor until 1978. (*Id.* at 52:20–53:3) There, he also worked as an officer, supervising and performing maintenance on propulsion plant equipment. (*Id.* at 53:4–15)

After working on the S5G prototype, Mr. Hillyer was stationed on the USS Tinosa as a chief machinist's mate. (*Id.* at 60:18–23) Mr. Hillyer testified that he had the same duty assignment there as on the USS George Washington Carver, but at the senior machinist's mate level. (*Id.* at 62:10–14) He was stationed on the USS Tinosa until about 1983. (*Id.* at 71:21–25)

### 2. Plaintiffs' product identification evidence

#### a. ABB/ITE

Mr. Hillyer did not identify working with any ABB product. However, he did identify products manufactured by ITE, a predecessor company, aboard the USS George Washington Carver and the USS Tinosa. (*Id.* at 50:23–52:16; 5/21/15 Tr. Vol. II at 314:4–13) Mr. Hillyer testified that he was exposed to asbestos dust while working in the presence of electricians, who were maintaining electrical breakers and associated internal components. (5/20/15 Video Tr. at

4

50:23–52:16) Specifically, he believed the casing of ITE breakers was made of asbestos-
containing bakelite. (5/21/15 Tr. Vol. II at 310:17–312:23)

### b. CBS/Westinghouse

Mr. Hillyer did not identify any products manufactured by CBS, a successor-in-interest to
Westinghouse. However, he did identify working with Westinghouse products during training
with the S1W prototype in Idaho, aboard the USS George Washington Carver, and aboard the
USS Tinosa. (*Id*. at 194:1–19; 5/20/15 Video Tr. at 51:17–52:16)

Mr. Hillyer believed there were two Westinghouse insulated turbines at the S1W training
center, but he did not know who manufactured the insulation. (5/21/15 Tr. Vol. II at 201:8–
203:18) He does not claim asbestos exposure from working in proximity to Westinghouse
turbines at the S1W training center. (*Id*. at 204:3–17)

Mr. Hillyer confirmed that he could not identify any Westinghouse product on the USS
George Washington Carver, despite his earlier testimony that Westinghouse may have
manufactured breakers aboard that vessel. (5/21/15 Tr. Vol. II at 193:23–25; 5/20/15 Video Tr.
at 51:17–52:16)

Mr. Hillyer identified two Westinghouse turbines on the USS Tinosa. (5/21/15 Tr. Vol.
II at 164:1–8) He described the turbines as lagged, i.e. insulated, and painted green. (*Id*. at
195:5–12) He testified that he did not do work to the Westinghouse turbines on the USS Tinosa,
except for when he "rolled out bearings on the main engines." (*Id*. at 197:17–21) That work
involved "removing all the lockers and interference around each engine, rigging from the
overhead to remove the bearing cap off each bearing[,] inspecting the bearing, taking readings,
putting a plastic piece in there, [and] putting a cap back on…." (*Id*. at 197:19–198:4) Mr. Hillyer
did not know if this work exposed him to asbestos, and he did not know the manufacturer of the
lagging material. (*Id*. at 198:5–14) He also testified that he routinely removed seal regulators on

5

the turbines a few times, which may have exposed him to asbestos-containing Flexitallic gaskets. (*Id*. at 199:5–200:2)

### c.  BW/IP

Mr. Hillyer identified Borg-Warner as the manufacturer of brine pumps aboard the USS George Washington Carver and the USS Tinosa. (5/20/15 Tr. Vol. I at 73:13-20; 75:19-25) Mr. Hillyer testified that there was one Borg-Warner brine pump on the USS George Washington Carver. (*Id*.) There was only one occasion when he worked on the brine pump between 1973 and 1974. He does not know if he was the first person to work on the pump, or who manufactured the packing for the pump. (*Id*. at 76:12-77:12) Mr. Hillyer recalled that there was a Borg-Warner brine pump aboard the USS Tinosa. (*Id*. at 86:4-15)

Mr. Hillyer does not know whether the brine pumps on either ship contained asbestos, but believes that the desurgers attached to the top of each brine pump were installed with asbestos-containing Flexitallic gaskets. (*Id*. at 78:7-14; 79:16-21; 87:16-19)

### d.  Eaton/Cutler-Hammer

Mr. Hillyer did not identify any product manufactured by Eaton, a successor-in-interest to Cutler-Hammer. However, he did remember seeing Cutler-Hammer branded products on the USS George Washington Carver. (5/20/15 Video Tr. at 52:5–16) He testified that there was Cutler-Hammer electrical equipment throughout the vessel, including controllers, panels, and breakers. (5/21/16 Tr. Vol. II at 170:13–20) However, Mr. Hillyer did not do electrical work, except for occasionally assisting the electricians. (*Id*. at 167:25–168:5) He did not know whether Cutler-Hammer controllers or panels contained asbestos. (*Id*. at 179:15–19) He believed he may have been exposed to asbestos because the electricians said bakelite was inside the metal breakers, and Mr. Hillyer's attorney told him that bakelite contained asbestos. (*Id*. at 186:14–

188:17) However, he did not know whether the bakelite he saw or handled contained asbestos. (*Id.* at 189:23–190:3)

### e. Union Carbide

Mr. Hillyer did not name Union Carbide as a manufacturer of products he worked with at the time of his alleged exposure to asbestos. However, he did testify that he was present when electricians were performing work to electrical breakers and switches. (*Id.* at 183:1–23) As explained at § II(B)(2)(d), *supra*, Mr. Hillyer believes that his asbestos exposure may have occurred because the breakers contained bakelite, and his attorney told him that bakelite contains asbestos. He explained that bakelite was the term the electricians used to describe the shiny, black plastic on some of the electrical equipment. (*Id.* at 187:3–188:9) Although Bakelite™ was a Union Carbide registered tradename, "bakelite" became a generic name for plastic products, including those not manufactured by Union Carbide. (D.I. 122 at 5, Ex. C at ¶ 3)

### f. Gould

Mr. Hillyer identified Gould as a manufacturer of electrical components, to which he generally alleges exposure during an overhaul in 1972 or 1973 on the USS George Washington Carver. (5/20/15 Video Tr. at 51:17–52:16; 5/21/15 Tr. Vol. II at 307:15–18) He believes that he may have breathed asbestos dust while working around electricians who were replacing breaker switches. (5/20/15 Video Tr. at 51:17–52:16) However, he did not remember any product to which he would have been exposed. (*Id.* at 307:19–21) He denies working directly with a Gould product. (*Id.* at 309:6–8)

Without further explanation, Gould notes that it may be liable for ITE products.[9] (D.I.

---

[9] Defendant Siemens explained in its summary judgment brief that Siemens acquired certain assets and liabilities from Gould and ITE in 1983. (D.I. 115 at 11) Siemens represents that pursuant to its purchase agreement, Gould assumed some liability for ITE products. (*Id.*)

124 at 6) Mr. Hillyer identified ITE as the manufacturer of electrical components on the USS George Washington Carver and USS Tinosa. (5/20/15 Video Tr. at 51:17–52:16; 5/21/15 Tr. Vol. II at 314:14–315:22) He testified that he noticed ITE products in 1972, when the USS George Washington Carver was going through an overhaul. (5/21/15 Tr. Vol. II at 309:13–23) At that time, electrical panel covers were off, so the internal components were exposed. (*Id.*) Mr. Hillyer also testified that he sometimes helped electricians throw out broken ITE products on the USS Tinosa. (*Id.* at 314:14–315:22) However, he never worked directly with an ITE product. (*Id.* at 310:1–6)

## III. LEGAL STANDARDS

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460– 61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). The non-movant must support its

8

contention by citing to particular documents in the record, by showing that the cited materials do

not establish the absence or presence of a genuine dispute, or by showing that an adverse party

cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)–(B). The

existence of some alleged factual dispute may not be sufficient to deny a motion for summary

judgment; rather, there must be enough evidence to enable a jury to reasonably find for the non-

moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely

colorable, or is not significantly probative, summary judgment may be granted." *Clark v. Welch*,

Civ. NO.14-029-SLR, 2016 WL 859259, at \*2 (D. Del. Mar. 3, 2016). If the non-movant fails to

make a sufficient showing on an essential element of its case on which it bears the burden of

proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact

undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R.

Civ. P. 56(e)(2)–(3).[10] A plaintiff's failure to respond "is not alone a sufficient basis for the

---

[10] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the
utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment
> by affidavits or other evidentiary matters sufficient to show that there is no
> genuine issue as to a material fact. The adverse party, in opposing the motion,
> does not produce any evidentiary matter, or produces some but not enough to
> establish that there is a genuine issue for trial. Instead, the adverse party rests on
> averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would
have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.*
However, the Advisory Committee noted that summary judgment is meant to pierce the
pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly,
the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule.
*Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings
accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.*
The amendment, however, was not designed to affect the ordinary standard applicable to
summary judgment. *Id.*

entry of a summary judgment." *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922

F.2d 168, 175 (3d Cir. 1990). Even where a party does not file a responsive submission to

oppose the motion, the court must still find that the undisputed facts warrant judgment as a

matter of law. *Miller v. Ashcroft*, 76 F. App'x 457, 462 (3d Cir. 2003) (citing Fed. R. Civ. P. 56;

*Lorenzo v. Griffith*, 12 F.3d 23, 28 (3d Cir. 1993)). In other words, the court must still determine

whether the unopposed motion for summary judgment "has been properly made and supported."

*Williams v. Murray, Inc.*, Civil No. 12–2122, 2014 WL 3783878, *2 (D.N.J. July 31, 2014)

(quoting *Muskett v. Certegy Check Svcs., Inc.*, No. 08-3975, 2010 WL 2710555, at *3 (D.N.J.

July 6, 2010)).

### B. Maritime Law

The parties do not dispute that maritime law applies to this action.[11] To establish

causation in an asbestos claim under maritime law, a plaintiff must show that "(1) he was

exposed to the defendant's product, and (2) the product was a substantial factor[12] in causing the

---

[11] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).

[12] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, E.D. PA Civil Action No. 2:09-69578, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which

10

injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)).  Other courts in this Circuit recognize a third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[13]  *Abbay v. Armstrong Int'l, Inc.*, E.D. PA Civil Action No. 2:10-CV-83248-ER, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

    "In establishing causation, a plaintiff may rely upon direct evidence...or circumstantial evidence [to] support an inference that there was exposure to the defendant's product for some length of time."[14]  *Abbay*, 2012 WL 975837, at *1 n.1 (citing *Stark*, 21 F. App'x at 376).  On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376).  "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492).

    Should the court decide that causation has been established, some Defendants rely upon

---

there always lurks the idea of responsibility."  Restatement (Second) of Torts § 431 cmt. a (1965).
[13] The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute.  This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, Civil Action No. 10-0113-SLR-SRF, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (Oct. 1, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).
[14] However, "'*substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991) (emphasis in original)).

the "bare metal" defense to avoid liability on the basis that they have no duty to Plaintiffs for asbestos-containing replacement parts they did not manufacture or distribute. *Conner v. Alfa Laval, Inc.,* 842 F. Supp. 2d 791, 801–02 (E.D. Pa. 2012) (explaining the policy rationale for holding only those who make or sell the injurious product liable for the injuries alleged). "The so-called 'bare metal defense' is recognized by maritime law, such that a manufacturer has no liability for harms caused by—and no duty to warn about hazards associated with—a product it did not manufacture or distribute." *Carper v. Gen. Elec. Co.*, Civil Action No. 2:12-06164-ER, 2014 WL 6736205, at *1 (E.D. Pa. Sept. 4, 2014) (citing *Conner*, 842 F. Supp. 2d at 801).

## IV.   Discussion

### A. ABB/ITE

The court should grant ABB's motion for summary judgment. ABB asserts that it is not liable for the ITE products that Mr. Hillyer identified. (D.I. 128 at 2) Furthermore, there is no evidence that Mr. Hillyer was exposed to asbestos from a product for which ABB is liable. (*Id.*) Moreover, such exposure, if any, would have been *de minimis* and cannot be considered a substantial factor in causing Mr. Hillyer's alleged injury. (*Id.*)

Mr. Hillyer attributed asbestos exposure to ITE products through the casing that encapsulated the breakers, which he believed was made of asbestos-containing bakelite. (5/21/15 Tr. Vol. II at 311:22–312:23) He never personally repaired electrical products, but he assisted electricians by holding breakers and discarding the broken components. (*Id.* at 314:14–315:11) Although Mr. Hillyer testified that he threw out cracked ITE products, he remembered that all the breakers remained encapsulated. (*Id.* at 315:4–25) Furthermore, he did not know whether the casings contained asbestos, as he was not sure if the bakelite he associated with electrical components contained asbestos. (*Id.* at 312:17–23)

12

Therefore, the evidence is insufficient to establish that Mr. Hillyer was exposed to any amount of asbestos while handling or discarding ITE circuit breakers, such that the alleged exposure was a substantial factor in causing Mr. Hillyer's alleged injury. *See Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). Moreover, ABB states that it is not liable for the ITE products identified by Mr. Hillyer. Plaintiffs do not refute this factual assertion. Therefore, judgment is warranted as a matter of law, and ABB's motion for summary judgment should be granted.

### B. CBS/Westinghouse

The court should grant CBS's motion for summary judgment because Plaintiffs fail to show that a material issue of fact exists as to whether a Westinghouse product was a substantial factor in causing Mr. Hillyer's injuries. *Lindstrom*, 424 F.3d at 492.

CBS asserts that there is a lack of evidence regarding causation. (D.I. 107 at 1) Even if Plaintiffs could show that a Westinghouse product caused Mr. Hillyer's alleged injuries, CBS is not liable because the undisputed evidence shows that Westinghouse did not manufacture, supply, or install the asbestos-containing insulation to which Mr. Hillyer alleges exposure. (*Id.* at 2)

Mr. Hillyer believes he was only exposed to asbestos-containing Westinghouse turbines while aboard the USS Tinosa from 1978 to 1983.[15] (5/21/15 Tr. Vol. II at 198:5–200:2) He testified that his exposure occurred as a result of working with asbestos-containing external

---

[15] Mr. Hillyer testified that he did not believe his work wiping down Westinghouse turbines in Idaho exposed him to asbestos. (5/21/15 Tr. Vol. II at 204:3–17) He also originally testified that he worked with Westinghouse products on the USS George Washington Carver. (5/20/15 Video Tr. at 51:17–52:16) However, he later stated that he did not work with Westinghouse products on that vessel. (5/21/15 Tr. Vol. II at 193:23–25) Such testimony is not sufficient to satisfy the substantial factor test with respect to these vessels.

insulation or gaskets. (*Id.*) Exposure to such products over the course of five years could be considered a substantial factor in causing Mr. Hillyer's injuries, if those products contained asbestos. *Lindstrom*, 424 F.3d at 492.

Plaintiffs have not supplied any evidence to establish that a Westinghouse turbine contained asbestos. There is no evidence in the record establishing that Westinghouse manufactured the external insulation or gaskets applied to the turbines. Mr. Hillyer testified that the gaskets were Flexitallic brand, and he did not know if they were originally installed by Westinghouse. (5/21/15 Tr. Vol. II at 199:15–24) Moreover, CBS submitted an Affidavit of Roger B. Horne Jr. RADM USN (Ret), who stated that the Navy required all turbines to be delivered without insulation. (D.I. 107, Ex. C at ¶¶ 24, 25) Plaintiffs have not filed a response containing a declaration to refute CBS's assertions. *See* Fed. R. Civ. P. 56(e)(2)–(3). Therefore, because CBS is not liable under maritime law for products it did not manufacture or distribute, CBS's motion for summary judgment should be granted. *See Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012); *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2014 WL 2514353, at *4 n.7 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) ("The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute.").

## C. BW/IP

The court should grant BW/IP's motion for summary judgment. BW/IP asserts there is no evidence that Mr. Hillyer was exposed to asbestos from a product for which BW/IP is liable. (D.I. 111 at 9) Even if BW/IP products contained asbestos, Mr. Hillyer's work on the pumps was

14

limited to one exposure on each vessel. (*Id.*)

Mr. Hillyer believes the source of his exposure to an asbestos-containing BW/IP product would have occurred as a result of exposure to the asbestos-containing Flexitallic gaskets between the desurgers and the pumps. (5/20/15 Tr. Vol. I at 78:7-79:21; 87:16-19) Plaintiffs have not supplied any evidence to establish that a BW/IP pump contained asbestos. There is no evidence that BW/IP manufactured the gaskets between the desurgers and the pumps. Mr. Hillyer testified that the gaskets were Flexitallic brand, and he did not know if they were originally installed by BW/IP. (*Id.*) Plaintiffs do not refute BW/IP's factual assertion that it did not manufacture or distribute the asbestos-containing Flexitallic gaskets. (D.I. 111 at 9) Therefore, because BW/IP is not liable under maritime law for products it did not manufacture or distribute, BW/IP's motion for summary judgment should be granted. *See Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012); *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No. 12-1635-SLR-SRF, 2014 WL 2514353, at \*4 n.7 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) ("The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute.").

### D. Eaton/Cutler-Hammer

Eaton's motion for summary judgment should be granted. Eaton argues that it is entitled to summary judgment because there is no evidence Mr. Hillyer worked with an asbestos-containing Cutler-Hammer product. (D.I. 110 at 2) Even if Cutler-Hammer breakers contained asbestos, Mr. Hillyer's breaker work was limited and non-invasive, so it could not have exposed him to respirable fibers. (*Id.*)

15

Mr. Hillyer believes his only source of exposure to an asbestos-containing Cutler-Hammer product would have occurred as a result of occasionally assisting electricians or being in the presence of their work. (5/21/15 Tr. Vol. II at 167:25–168:5)  Mr. Hillyer's exposure to any Cutler-Hammer breaker was limited, as he did not personally work on any of the breakers. (*Id.* at 183:1–24) He generally watched maintenance being conducted from about five feet away, or held onto a breaker while the electrician was working.  (*Id.* at 183:1–185:24) Sometimes, he saw dust while electricians were working, which he thought could be associated with asbestos-containing bakelite inside the breakers. (5/20/15 Video Tr. at 51:1–52:16) However, Mr. Hillyer did not know if dust was attributed to maintenance of internal components, which may or may not have contained asbestos. (5/21/15 Tr. Vol. II at 191:7–193:7)

Because Mr. Hillyer never personally worked with Cutler-Hammer breakers, and he did not know if dust was associated with asbestos-containing bakelite, Mr. Hillyer's testimony does not amount to more than minimal exposure.  Moreover, Eaton submitted an expert report from Sheldon H. Rabinovitz, PhD, CIH, which indicates that even if the breakers contained asbestos, the trace amount of asbestos that could be produced by drilling would not have been substantial enough to cause Mr. Hillyer's alleged injuries. (D.I. 110, Ex. G) "'Minimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (quoting *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 376 (6th Cir. 2001)).  Therefore, Eaton's motion for summary judgment should be granted.

### E. Union Carbide

Union Carbide's motion for summary judgment should be granted.  Union Carbide

contends that summary judgment is warranted because there is no evidence that Mr. Hillyer worked around Union Carbide manufactured Bakelite™ compounds. (D.I. 122 at 7) Even if Mr. Hillyer worked with Union Carbide products, that work was limited and non-invasive, so it would not have exposed him to respirable asbestos fibers. (*Id.*)

Mr. Hillyer's only association with Union Carbide is as the manufacturer of bakelite, which electricians told him was present in equipment they repaired in his presence. (5/21/15 Tr. Vol. II at 183:1–23) From approximately 1939 to the 1980's, Union Carbide manufactured phenolic resins and molding compound under the tradename Bakelite™. (D.I. 122 at 4–5, Ex. C at ¶ 2) Union Carbide maintains that its phenolic resins did not contain asbestos, and Plaintiffs do not refute that assertion. (*Id.* at 5) However, Union Carbide concedes that some of its molding compounds were manufactured with asbestos until 1974. (*Id.* at 5, Ex. C at ¶ 3) Union Carbide asserts that none of its asbestos-containing molding compounds were approved for Navy use. (*Id.* at 10)

Because the term "bakelite" is used as a general reference to plastic products, and Union Carbide's molding compounds were not approved for Navy use, Mr. Hillyer's general reference to bakelite is insufficient to withstand Union Carbide's motion for summary judgment. (*Id.* at 5) Moreover, Plaintiffs do not establish that Mr. Hillyer was exposed to asbestos-containing Bakelite™. Finally, even if there was asbestos-containing Bakelite™ present, Plaintiffs do not establish that Mr. Hillyer was exposed to respirable fibers, as he did not know if the dust he breathed was associated with electrical breakers. Plaintiffs are unable to show "a high enough level of exposure [to a Union Carbide product] that an inference that the asbestos was a substantial factor in the injury is more than conjectural." *Stark v. Armstrong World Indus., Inc.*, 21 Fed. App'x 371, 376 (6th Cir. 2001) (granting defendant's motion for summary judgment

17

under maritime law). Therefore, Union Carbide's motion for summary judgment should be granted.

### F. Gould

Gould's motion for summary judgment should be granted. Gould asserts that it is entitled to summary judgment because there is no evidence Mr. Hillyer was exposed to a Gould manufactured asbestos-containing product. (D.I. 124 at 1) Even if Plaintiffs could show such a product was a substantial factor in causing Mr. Hillyer's alleged injuries, the "bare metal" and "government contractor" defenses shield Gould from liability. (*Id.*)

Mr. Hillyer identified both Gould and ITE products in the context of being present while electricians performed maintenance to breakers and electrical equipment. (5/20/15 Video Tr. at 51:7–52:16) He never worked directly with any Gould or ITE product. (5/21/15 Tr. Vol. II at 308:19–310:6) He could not remember any specific Gould component or whether it may have exposed him to asbestos. (*Id.* at 308:19–309:8) Mr. Hillyer did not specifically remember any broken ITE products he was around or directly handled. (*Id.* at 310:1–6) Even if the products were present aboard the vessels and contained bakelite, Mr. Hillyer did not know if the bakelite contained asbestos. (*Id.* at 312:20–23)

Accordingly, Plaintiffs have not shown "proof of substantial exposure" to an asbestos-containing Gould or ITE product, such that the products could have been "a substantial factor in causing injury." *Lindstrom v. A-C Product Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005). Therefore, Gould's motion for summary judgment should be granted.

### V. Conclusion

For the foregoing reasons, and as addressed in the chart *infra*, the court recommends granting Defendants' motions for summary judgment.

| Defendant | Motion for Summary Judgment |
|---|---|
| ABB, Inc. | GRANT |
| CBS Corporation | GRANT |
| BW/IP, Inc. | GRANT |
| Eaton Corporation | GRANT |
| Union Carbide Corporation | GRANT |
| Gould Electronics, Inc. | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R.

Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Report and Recommendation.  Fed.

R. Civ. P. 72(b)(2).  The objection and responses to the objections are limited to ten (10) pages

each. The failure of a party to object to legal conclusions may result in the loss of the right to de

novo review in the District Court.  *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir.

2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

http://www.ded.uscourts.gov.

Dated: July **28**   , 2016

Sherry R. Fallon
United States Magistrate Judge