## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ASBESTOS LITIGATION | ) | |
| | ) | |
| MARK E. HILLYER and CAROL | ) | |
| HILLYER, his wife, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 15-378-GMS-SRF |
| | ) | |
| ABB, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

### REPORT AND RECOMMENDATION

## I.  INTRODUCTION

Presently, there are five motions for summary judgment before the court in this asbestos-related personal injury action.[1]  The motions were filed by Defendants, Mine Safety Appliances Company ("MSA") (D.I. 112), Copes-Vulcan Inc. ("Copes") (D.I. 116), Spirax Sarco Inc. ("Sarco") (D.I. 118), Crane Co. ("Crane") (D.I. 125), and Air & Liquid Systems Corporation[2] ("ALS" or "Buffalo") (D.I. 129) (collectively "Defendants").  As indicated by the chart, *infra*, and for the reasons set forth below, I recommend that the court grant-in-part and deny-in-part MSA's motion for summary judgment, grant-in-part and deny-in-part Copes' motion for summary judgment, grant-in-part and deny-in part Crane's motion for summary judgment, grant Sarco's motion for summary judgment, and grant ALS's motion for summary judgment.

---

[1] The court previously issued a Report and Recommendation addressing the unopposed motions for summary judgment in this action.  (D.I. 159)

[2] Air & Liquid Systems Corp. is a successor by merger to Buffalo Pumps, Inc.  (D.I. 130 at 1)

| Defendant | Motion for Summary Judgment |
|---|---|
| Mine Safety Appliances Company | GRANT-IN-PART, DENY-IN-PART |
| Copes-Vulcan Inc. | GRANT-IN-PART, DENY-IN-PART |
| Crane Co. | GRANT-IN-PART, DENY-IN-PART |
| Spirax Sarco Inc. | GRANT |
| Air & Liquid Systems Corporation | GRANT |

## II. BACKGROUND

### A. Procedural History

Mark and Carol Hillyer ("Plaintiffs") filed this asbestos action in the Delaware Superior Court against multiple defendants on March 23, 2015, asserting claims regarding Mr. Hillyer's alleged harmful exposure to asbestos.[3] (D.I. 1, Ex. 1) Crane removed the action to this court on May 11, 2015. (D.I. 1) MSA, Copes, Sarco, and Crane filed motions for summary judgment on June 17, 2016. (D.I. 112, 116, 118, 125) ALS filed a motion for summary judgment on June 21, 2016. (D.I. 129) Plaintiffs oppose the motions. (D.I. 131–135) The court held oral argument on August 17, 2016.

### B. Facts

#### 1. Plaintiffs' alleged exposure history

Plaintiffs allege that Mr. Hillyer developed mesothelioma as a result of exposure to asbestos-containing products during the course of his employment with the U.S. Navy from 1967 to 1997.[4] (D.I. 1, Ex. 1 at ¶ 3) Plaintiffs contend that Mr. Hillyer was injured due to exposure to

---

[3] Plaintiffs also assert a loss of consortium claim on behalf of Mrs. Hillyer, which is derivative of Mr. Hillyer's claims. (D.I. 1, Ex. 1 at ¶¶ 32–33)

[4] Plaintiffs allege that exposure occurred while working for the U.S. Navy as: (1) a student in Great Lakes, IL from 1967 to 1968; (2) a student in Mare Island, CA in 1968; (3) a student in Idaho Falls, ID from 1968 to 1969; (4) a student in Groton, CT from 1969 to 1970; (5) a machinist mate in Groton, CT from 1970 to 1974; (6) a staff supervisor in Idaho Falls, ID from 1974 to 1978; (7) a machinist mate in Portsmouth, NH from 1978 to 1983; (8) a staff supervisor in Groton, CT from 1983 to 1986; (9) a machinist mate in Groton, CT from 1986 to 1991; (10) a

asbestos-containing products that Defendants manufactured, sold, distributed, or installed. (*Id.*, Ex. 1 at ¶ 10) Accordingly, Plaintiffs assert negligence, punitive damages, strict liability, and loss of consortium claims. (*Id.*, Ex. 1)

Mr. Hillyer was deposed on May 20, 2015 and May 21, 2015. Plaintiffs did not produce any other fact or product identification witness for deposition.[5] Mr. Hillyer testified that he enlisted in the Navy on August 14, 1967. (5/20/15 Video Tr. at 18:7–9) After boot camp, he moved between multiple training centers until he was stationed on the USS George Washington Carver from 1970 to 1974. (*Id.* at 18:1–23:3) There, Mr. Hillyer worked as a machinist's mate "in the machinery division in the operation, maintenance, preservation, and cleanliness of reactor plant and steam plant systems and components." (*Id.* at 22:1–5) The reactor plant heated water to create steam for the vessel's boilers. (*Id.* at 23:5–15) On the USS George Washington Carver, Mr. Hillyer conducted preventative maintenance to main engines and turbine generators, and corrective maintenance when repairs were required. (*Id.* at 24:10–25:14) He believes he was exposed to asbestos while conducting maintenance because many of the parts had asbestos-containing gaskets or components that gave off dust and residue. (*Id.* at 26:5–24)

Mr. Hillyer then worked at a nuclear power training unit in Idaho Falls, Idaho before he was stationed on the USS Tinosa as a chief machinist's mate. (*Id.* at 60:18–23) Mr. Hillyer testified that he had the same duty assignment there as on the USS George Washington Carver, but at the senior machinist's mate level. (*Id.* at 62:10–14) He was stationed on the USS Tinosa

---

staff supervisor in Windsor, CT from 1991 to 1993; and (11) a machinist mate in Windsor, CT from 1996 to 1997. (D.I. 1, Ex. 1 at ¶ 3)

[5] The deadline to complete depositions of all plaintiffs alleging exposure was May 20, 2015. (D.I. 55 at ¶ 4(c)(iii); D.I. 128 at 1) The deadline to complete depositions of all co-worker, product identification, and other exposure testimony witnesses was November 6, 2015. (D.I. 55 at ¶ 4(c)(iv); D.I. 128 at 1) The deadline to complete fact discovery was April 29, 2016. (D.I. 82 at ¶ 3; D.I. 128 at 1)

until about 1983. (*Id*. at 71:21–25) Mr. Hillyer was then stationed at several other facilities and vessels until retiring from the Navy in 1997. (*Id*. at 15:15–16)

### 2. Plaintiffs' product identification evidence

#### a. MSA

Mr. Hillyer associates asbestos exposure with an MSA steam suit, which was used in simulating emergency drills on the USS George Washington Carver. (*Id*. at 48:20–49:20) One person would wear the suit in the machinery space aboard the vessel, isolate any components in case of a major steam leak, or enter the reactor tunnel to isolate leaks in the piping or tunnel. (*Id*. at 49:1–7) Mr. Hillyer testified that he was chosen to wear the steam suit because of his stature relative to the suit's large size, and his position as a machinist's mate with knowledge of the valves and pipes. (*Id*. at 49:8–15) He did not know who manufactured the suit, but the suit came in a green box marked "MSA." (*Id*. at 49:16–20)

#### b. Copes

Mr. Hillyer testified that he replaced packing on Copes valves aboard the USS George Washington Carver while the vessel was in port. (*Id*. at 35:16–36:22; 5/21/15 Tr. Vol. II at 212:12–25) He did not know how many Copes valves were located in the engine room in which he worked, but he testified that there were more Crane valves than Copes valves present. (5/21/15 Tr. Vol. II at 209:4–22) Mr. Hillyer did not know the specific details regarding the Copes valves with which he worked, but he did testify that they were "globe" type as opposed to "butterfly" valves. (*Id*. at 211:8–25)

Mr. Hillyer identified using Anchor and Garlock brand packing when repacking valves. (*Id*. at 215:19–23) He did not know the manufacturer of the packing he removed. (*Id*. at 215:24–216:4) During the repacking process, Mr. Hillyer testified that he installed thermal insulation, but

he did not know the manufacturer of that insulation. (*Id.* at 213:3–214:19)

### c. Crane

Mr. Hillyer testified that he frequently replaced packing on Crane valves on the USS

George Washington Carver. (5/20/15 Video Tr. at 35:16–36:22) He also identified steam valves

aboard the USS Tinosa. (*Id.* at 64:2–10) Mr. Hillyer believes that he was exposed to asbestos

through dust created by replacing packing on the valves. (*Id.* at 33:22–35:3) He believes the

gaskets and packing contained asbestos because the replacement material they used were labeled

"asbestos," and those who worked on the valves before him would have used the same

replacement material. (5/21/15 Tr. Vol. II at 155:11–156:10)

### d. Sarco

Mr. Hillyer testified that there was an evaporator on the USS George Washington Carver,

which was used as a main water source in the reactor plant. (5/20/15 Video Tr. at 25:15–29:24)

There was a Sarco steam trap on the evaporator. (*Id.* at 44:21–25) The Sarco traps were

connected to the system by flanges. (*Id.* at 45:1–9) Mr. Hillyer believes he was exposed to

asbestos as a result of cleaning asbestos-containing flange gaskets. (*Id.* at 45:10–46:21)

### e. ALS/Buffalo

Mr. Hillyer identified working with Buffalo pumps aboard the USS George Washington

Carver. (*Id.* at 32:16–20) He testified that there were three Buffalo pumps associated with the

lithium bromide air conditioning plant, and one low-pressure Buffalo brine pump on the

evaporator. (*Id.* at 24:1–4; 5/21/15 Tr. Vol. II at 263:8–266:16) Mr. Hillyer thought the brine

pump was Buffalo brand, but he could not confirm that with certainty. (5/21/15 Tr. Vol. II at

293:16–23)

Mr. Hillyer testified that he did not do any work to the Buffalo pumps associated with the

5

lithium bromide system. (*Id.* at 265:2–7) With respect to the brine pump, Mr. Hillyer testified

that he disassembled the pump, replaced wearing rings, and unplugged material that built up

inside the pump. (*Id.* at 267:3–24) He also replaced gaskets on the pump with Garlock gaskets.

(*Id.* at 267:25–20) He did not know if the gaskets he replaced were original to the pump. (*Id.* at

269:4–270:4)

### III. LEGAL STANDARDS

#### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322–23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed

material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to

demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the

light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–

61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). The non-movant must support its

contention by citing to particular documents in the record, by showing that the cited materials do

not establish the absence or presence of a genuine dispute, or by showing that an adverse party

cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)–(B). The

6

existence of some alleged factual dispute may not be sufficient to deny a motion for summary judgment; rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247–49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Clark v. Welch*, Civ. NO.14-029-SLR, 2016 WL 859259, at *2 (D. Del. Mar. 3, 2016). If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

### B.  Maritime Law

The parties do not dispute that maritime law applies to this action.[6] To establish causation in an asbestos claim under maritime law, a plaintiff must show that "(1) he was exposed to the defendant's product, and (2) the product was a substantial factor[7] in causing the injury he suffered." *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F. App'x 371, 375 (6th Cir. 2001)). Other

---

[6] For maritime law to apply, a plaintiff's exposure underlying a products liability claim must meet both a locality test and a connection test. In *Jerome B. Grubart v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527 (1995), the Supreme Court defined these tests as follows:

> A court applying the location test must determine whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water. The connection test raises two issues. A court, first, must "assess the general features of the type of incident involved," to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

513 U.S. at 534 (internal citations omitted).

[7] "Maritime law incorporates traditional 'substantial factor' causation principles, and courts often look to the Restatement (Second) of Torts for a more helpful definition." *Delatte v. A.W. Chesterton Co.*, E.D. PA Civil Action No. 2:09-69578, 2011 WL 11439126, at *1 n.1 (E.D. Pa. Feb. 28, 2011). The comments to the Restatement indicate that the word "substantial," in this context, "denote[s] the fact that the defendant's conduct has such an effect in producing the harm as to lead reasonable men to regard it as a cause, using that word in the popular sense, in which there always lurks the idea of responsibility." Restatement (Second) of Torts § 431 cmt. a (1965).

courts in this Circuit recognize a third element and require a plaintiff to "show that (3) the defendant manufactured or distributed the asbestos-containing product to which exposure is alleged."[8] *Abbay v. Armstrong Int'l, Inc.*, E.D. PA Civil Action No. 2:10-CV-83248-ER, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).

"In establishing causation, a plaintiff may rely upon direct evidence…or circumstantial evidence [to] support an inference that there was exposure to the defendant's product for some length of time."[9] *Id.* (citing *Stark*, 21 F. App'x at 376). On the other hand, "'[m]inimal exposure' to a defendant's product is insufficient to establish causation. Likewise, a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient." *Lindstrom*, 424 F.3d at 492 (quoting *Stark*, 21 F. App'x at 376). "Rather, the plaintiff must show 'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay*, 2012 WL 975837, at *1 n.1 (quoting *Lindstrom*, 424 F.3d at 492).

Should the court decide that causation has been established, some Defendants rely upon the "bare metal" defense to avoid liability on the basis that they have no duty to Plaintiffs for asbestos-containing replacement parts they did not manufacture or distribute. *Conner v. Alfa Laval, Inc.,* 842 F. Supp. 2d 791, 801–02 (E.D. Pa. 2012) (explaining the policy rationale for

---

[8] The majority of federal courts have held that, under maritime law, a manufacturer has no liability for harms caused by, and no duty to warn about hazards associated with, a product it did not manufacture or distribute. This is also referred to as the "bare metal" defense. *See Dalton v. 3M Co.*, Civil Action No. 10-0113-SLR-SRF, 2013 WL 4886658, at *7 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (Oct. 1, 2013) (citing cases); *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 801 (E.D. Pa. 2012).

[9] However, "'*substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury.'" *Stark*, 21 F. App'x. at 376 (quoting *Harbour v. Armstrong World Indus., Inc.*, No. 90-1414, 1991 WL 65201, at *4 (6th Cir. April 25, 1991) (emphasis in original)).

holding only those who make or sell the injurious product liable for the injuries alleged). "The so-called 'bare metal defense' is recognized by maritime law, such that a manufacturer has no liability for harms caused by—and no duty to warn about hazards associated with—a product it did not manufacture or distribute." *Carper v. Gen. Elec. Co.*, Civil Action No. 2:12-06164-ER, 2014 WL 6736205, at *1 (E.D. Pa. Sept. 4, 2014) (citing *Conner*, 842 F. Supp. 3d at 801).

### C. Strict Product Liability

The Third Circuit has recognized that "concepts of products liability, including Restatement (Second) of Torts § 402A (1965), are applicable in admiralty law." *East River Steamship Corp. v. Delaval Turbine, Inc.*, 752 F.2d 903, 907 (3d Cir. 1985). Section 402A provides for strict liability to sellers for harm caused by defective or unreasonably dangerous products. § 402A. Under § 402A,

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
> > (a) the seller is engaged in the business of selling such a product, and
> > (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
> > (a) the seller has exercised all possible care in the preparation and sale of his product, and
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

*Id.* The rationale underlying strict liability in § 402A is that:

> [T]he seller, by marketing his product for use and consumption, has undertaken and assumed a special responsibility toward any member of the consuming public who may be injured by it; that the public has the right to and does expect, in the case of products which it needs and for which it is forced to rely upon the seller, that reputable sellers will stand behind their goods; that public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them, and be treated as a cost of production against which liability insurance can be obtained; and that the consumer of such products is entitled to the maximum of protection at the hands of someone, and the proper persons to afford it are those who market the products.

§ 402A cmt. c.

In the present action, Plaintiffs assert that Defendants are liable for Mr. Hillyer's injuries for inadequate warning or failure to warn under a strict product liability theory.  (D.I. 1, Ex. 1 at ¶ 26) A product may be found defective if it fails to contain adequate warnings.  *See Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 796 (E.D. Pa. 2012) (citing Restatement (Third) of Torts: Prods. Liab. § 2 (1998)).  A product

> is defective because of inadequate instructions or warnings when the foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the seller or other distributor, or a predecessor in the commercial chain of distribution, and the omission of the instructions or warnings renders the product not reasonably safe.

*Id.* at 796 n.7 (quoting Restatement (Third) of Torts: Prods. Liab. § 2 (1998)).  Pursuant to § 402A, where a seller "has reason to anticipate that danger may result from a particular use…he may be required to give adequate warning of the danger."  § 402A. Where

> the product contains an ingredient to which a substantial number of the population are allergic, and the ingredient is one whose danger is not generally known, or if known is one which the consumer would reasonably not expect to find in the product, the seller is required to give warning against it, if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge, of the presence of the ingredient and the danger.

§ 402A cmt. j.

As with negligence claims under maritime law, "the policy motivating products-liability law confirms that manufacturers in the chain of distribution can be liable only for harm caused by their own products."  *Conner*, 842 F. Supp. 2d at 800.

### D.  Government Contractor Defense

According to the Supreme Court, a federal contractor is not liable for design defects in

military equipment[10] under state tort laws when:

> (1) the United States approved reasonably precise specifications;
> (2) the equipment conformed to those specifications; and
> (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.[11]

*Boyle*, 487 U.S. at 512–13.  Federal courts have tailored the *Boyle* elements to failure to warn

claims as follows:

> (1) the United States exercised its discretion and approved the warnings, if any;
> (2) the contractor provided warnings that conformed to the approved warnings; and
> (3) the contractor warned the United States of the dangers in the equipment's use about which the contractor knew, but the United States did not.

*Hicks v. Boeing Co.*, Civil Action No. 13-393-SLR-SRF, 2014 WL 1051748, at *5 (D. Del. Mar.

17, 2014), *report and recommendation adopted*, 2014 WL 1391104 (D. Del. Apr. 8, 2014)

(quoting *MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2013 WL

6571808, at *4 (D. Del. Dec. 13, 2013), *report and recommendation adopted*, 2014 WL 108535

(D. Del. Jan. 9, 2014)).

The Supreme Court in *Boyle* held that the government contractor defense pre-empts state

tort law when "the state-imposed duty of care that is the asserted basis of the contractor's

liability…is precisely contrary to the duty imposed by the government contract."  *Boyle*, 487

---

[10] In the Third Circuit, the government contractor defense is "available to all contractors who are 'compelled by a contract to perform an obligation for the United States,' even where a nonmilitary product is at issue." *Megill v. Worthington Pump, Inc.*, No. CIV. A. 98-76-SLR, 1999 WL 191565, at *3 n.1 (D. Del. March 26, 1999) (quoting *Carley v. Wheeled Coach*, 991 F.2d 1117, 1120 (3d Cir. 1993)).

[11] According to the *Boyle* court:

> The first two of these conditions assure that . . . the design feature in question was considered by a Government officer, and not merely by the contractor itself. The third condition is necessary because, in its absence, the displacement of state tort law would create some incentive for the manufacturer to withhold knowledge of risks, since conveying that knowledge might disrupt the contract but withholding it would produce no liability.

*Boyle v. United Techs Corp.*, 487 U.S. 500, 512–13 (1988).

U.S. at 509.  Thus, in actions such as the present case, involving allegations of failure to warn of the dangers of asbestos, the removing defendant

> must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law.  Moreover, it seems clear to us [] that *Boyle's* requirement of government approval of "reasonably precise specifications" mandates that the federal duties be imposed upon the contractor.  The contractor must show that whatever warning accompanied a product resulted from a determination of a government official,…and thus that the government itself "dictated" the content of the warnings meant to accompany the product.

*In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d 451, 454 (D. Del. 2009) (quoting *In re Joint E. & S. Dist. N.Y. Asbestos Litig.*, 897 F.2d 626, 630 (2d Cir. 1990)).

## IV. DISCUSSION

### A. Punitive Damages Claim Against Each Defendant

Summary judgment should be granted in favor of each Defendant with respect to Plaintiffs' punitive damages claim.  In Count II of the complaint, Plaintiffs allege that Defendants acted "willfully and wantonly, for their own economic gain and with reckless indifference to the health and safety of Plaintiff Mark E. Hillyer" in including asbestos in their products and failing to warn of the associated hazards.  (D.I. 1, Ex. 1 at ¶ 22)

Punitive damages are limited to situations where "a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008) (internal citations omitted).  "Punitive damages are not intended to compensate the plaintiff for a loss suffered, but instead are 'imposed for purposes of retribution and deterrence.'" *In re Asbestos Prod. Liab. Litig. (No. VI)*, 2014 WL 3353044, at *11 (E.D. Pa. July 9, 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell,* 538 U.S. 408, 416 (2003)).

In support of their claim, Plaintiffs cite to one journal article explaining that the hazards

of asbestos were suggested by the scientific community as early as 1935.  (D.I. 131, Ex. 5)
However, Plaintiffs fail to produce any evidence regarding each Defendant's knowledge of
asbestos hazards or conduct indicative of willful or wanton actions.  Therefore, the court should
grant Defendants' motions for summary judgment with respect to Plaintiffs' punitive damages
claims as to each.

### B.  MSA

The court should grant-in-part and deny-in-part MSA's motion for summary judgment.
MSA argues that summary judgment is warranted based on three primary arguments: 1) lack of
exposure to an asbestos-containing MSA product; 2) the suit was not defective or unreasonably
dangerous; and 3) the government contractor defense.[12]  (D.I. 113 at 1)

#### 1.  Product identification and causation

MSA asserts that Plaintiffs are unable to show that the steam suit was manufactured by
MSA.  (*Id.* at 7) Although the suit was contained in a box allegedly marked, "MSA," Mr. Hillyer
could not remember any identification of a manufacturer on the tag inside of the suit.  (*Id.*) If the
suit was manufactured by MSA, MSA argues that Mr. Hillyer's exposure to asbestos from the
suit was *de minimis*, as he only wore it three to six times for less than an hour each.[13]  (*Id.* at 7–8)
MSA further argues that there is no evidence to show that the suit was a substantial factor in
causing Mr. Hillyer's alleged injuries, as Mr. Hillyer only associated asbestos with the suit
because he thought the dust inside the box contained asbestos.  (*Id.*)

---

[12] MSA initially brings up waiver as a defense to Plaintiffs claims, but MSA does not
substantiate this defense in the body of its brief.  (D.I. 113 at 1)

[13] The parties do not dispute that Mr. Hillyer only wore the suit three to six times before the USS
George Washington Carver went into dry dock in 1972.  (D.I. 113 at 7–8; D.I. 131 at 4–5) MSA
asserted at oral argument that after the vessel went into dry dock, Mr. Hillyer may have worn the
suit an additional three to six times.  However, MSA argues that Mr. Hillyer knew of asbestos
hazards during this time frame.

Plaintiffs respond that there are genuine issues of material fact regarding product identification and causation. (D.I. 131 at 8–12) Mr. Hillyer testified that the steam suit was in a box marked "MSA." (*Id.* at 8) According to Navy specifications, the suit was supposed to be stored in a box bearing the mark of the contractor. (*Id.*) Moreover, MSA used the mark "MSA" on its products and sold asbestos-containing safety suits to the government, some of which were "shiny silver colored" as identified by Mr. Hillyer. (*Id.*)

Mr. Hillyer identified a silver, asbestos-containing steam suit. (5/21/15 Tr. Vol. II at 299:22–25) MSA admits that it sold asbestos-containing silver aluminized safety suits. (D.I. 131, Ex. 3 at 13) Mr. Hillyer testified that "MSA" appeared on the box containing the steam suit. (5/20/15 Video Tr. at 49:16–20) MSA used the mark "MSA" on some of its products. (D.I. 131, Ex. 3 at 13) The parties cite to a military specification requiring flame proof suits to contain 78% asbestos. (*Id.*, Ex. 4) According to the specification, the head and shoulders of the suit were supposed to be covered with asbestos cloth. (*Id.*, Ex. 4 at ¶ E-13) Additionally, such suits were supposed to be shipped in a box marked by the manufacturer's name.[14] (*Id.*, Ex. 4 at ¶¶ G-1, G-3a) Therefore, a genuine issue of material fact exists as to whether Mr. Hillyer was exposed to an asbestos-containing steam suit manufactured by MSA. Assuming, arguendo, that MSA is the manufacturer of the steam suit, a genuine issue of material fact exists as to whether the number of times and length of time worn on each occasion amounts to a substantial factor in causing Mr. Hillyer's alleged injuries. There is nothing in the record upon which the court can rely in determining whether the alleged exposure is *de minimis*. A reasonable jury could find that Mr. Hillyer was exposed to asbestos when he opened the box, retrieved the suit, donned the suit, and

---

[14] Plaintiffs claim the dust inside the box was related to asbestos flaking off the exterior suit material based on Mr. Hillyer's observation of creases in the folded joints of the suit. (D.I. 131 at 4)

was confined within it for close to an hour each time.  Furthermore, a fact question exists as to whether such exposure was a substantial factor in causing his mesothelioma.  Therefore, summary judgment should not be granted.

### 2.  Strict product liability

MSA asserts that Plaintiffs are unable to show that the suit was defective or unreasonably dangerous.  (D.I. 113 at 8–9) Section 402A only applies "where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer...."  Restatement (Second) of Torts § 402A cmt. g (1965).  Because the Navy required the suit to contain asbestos, and it was meant to be used during high heat conditions, "it can hardly be suggested that the product reached the user in a condition not contemplated prior to its delivery."  (D.I. 113 at 9) Plaintiffs respond that MSA's argument shows that it is liable for failure to warn.  (D.I. 131 at 13) That the suit was intended to withstand high heat does not relieve MSA of its duties or liabilities.  (*Id.*) Otherwise, "the Court would be adopting a per se rule that no asbestos-containing product is unreasonably dangerous if it was intended by the manufacturer or supplier to use asbestos—which is descriptive of them all."  (*Id.* at 13–14)

A product is defective due to inadequate warnings when the foreseeable risk of harm could have been reduced by adequate warnings.  *Conner v. Alfa Laval, Inc.*, 842 F. Supp. 2d 791, 796 n.7 (quoting Restatement (Third) of Torts: Prods. Liab. § 2 (1998)).  Additionally, § 402A requires a seller to warn when he "has reason to anticipate that danger may result from a particular use."  Restatement (Second) of Torts § 402A cmt. j (1965).

A question of fact exists regarding whether the steam suit was defective due to inadequate warnings or failure to warn.  Therefore, I recommend that the court deny summary judgment with respect to this claim.

15

### 3. Government contractor defense

MSA argues that the government contractor defense shields it from liability because any MSA product sold to the Navy would have been subject to, and complied with, detailed government specifications, specifically, MIL-S-20093, which covers asbestos flame proof suits. (D.I. 113 at 9–10, Ex. B) Plaintiffs respond that triable issues remain because MIL-S-20093 does not address warning requirements. (D.I. 131 at 14–19)

This court has found that *Boyle* applies to both design defect and failure to warn claims. *See, e.g., In re Asbestos Litig. (Wines) v. ABB, Inc.*, Civil Action No. 14-1190-GMS-SRF, 2016 WL 3360703 (D. Del. June 10, 2016), *report and recommendation adopted*, 2016 WL 3951372 (D. Del. July 21, 2016); *Tallman v. CBS Corp.*, Civ. No. 15-395-SLR-SRF, 2016 WL 452309 (D. Del. Feb. 5, 2016), *report and recommendation adopted*, 2016 WL 754079 (D. Del. Feb. 24, 2016); *Evans v. Foster Wheeler Energy, Corp.*, C.A.No. 15-681-SLR-SRF, 2016 WL 452310 (D. Del. Feb 5, 2016), *report and recommendation adopted*, 2016 WL 754122 (D. Del. Feb. 24, 2016); *Hicks v. Boeing Co.*, Civil Action No. 13-393-SLR-SRF, 2014 WL 1051748 (D. Del. Mar. 17, 2014), *report and recommendation adopted*, 2014 WL 1391104 (D. Del. Apr. 8, 2014).

Because MIL-S-20093 is silent as to warnings, "there is no evidence of record that the U.S. Navy prohibited [MSA] from, or otherwise directed defendants related to, issuing warnings." *In re Asbestos Litig. (Seitz)*, 661 F. Supp. 2d 451, 455 (D. Del. 2009). Courts have concluded that the government contractor defense is inapplicable under those facts. *Id.* Furthermore, there is no evidence that the suit conformed to MIL-S-20093, aside from MSA's bare assertion that it must have or the Navy would not have bought the suit. (D.I. 113 at 10) It is conjectural to conclude such without support in the record for MSA's assertion. Whether MSA is insulated from liability under the government contractor defense is a question for the jury.

16

Therefore, the court should deny MSA's motion for summary judgment with respect to the

negligence, strict liability, and loss of consortium claims.  As discussed at § IV(A), *supra*,

MSA's motion for summary judgment should be granted with respect to the punitive damages

claim.

### C. Copes

Copes' motion for summary judgment should be granted-in-part and denied-in-part

because a genuine issue of material fact exists as to whether exposure to an asbestos-containing

Copes product was a substantial factor in causing Mr. Hillyer's alleged injuries.

Copes argues that "there are no facts from which one can reasonably conclude that the

[asbestos-containing] packing and external insulation were made, sold, or otherwise placed into

the stream of commerce by Copes." (D.I. 117 at 1) If Copes were legally responsible for the

asbestos-containing products from which Mr. Hillyer alleges exposure, any alleged exposure was

not a substantial factor in causing Mr. Hillyer's alleged injuries.  (*Id.* at 2) Plaintiffs respond that

a genuine issue of material fact exists because Copes admitted that its valves contained asbestos

gaskets and packing material, and Mr. Hillyer testified to working with Copes valves.  (D.I. 133

at 7)

In the present action, Mr. Hillyer testified that he replaced the packing on Copes valves

aboard the USS George Washington Carver.[15] (5/20/15 Video Tr. at 35:16–36:22; 5/21/15 Tr.

Vol. II at 212:12–25) Mr. Hillyer could not quantify how many times he worked with Copes

valves as opposed to Crane valves, but he testified that Copes valves were second most common

to Crane aboard the vessel.  (5/20/15 Video Tr. at 36:16–22) Although he specifically recalled

---

[15] Mr. Hillyer also originally testified that there were Copes valves present on the USS Tinosa, but he later stated that he could not remember whether he worked with Copes valves on that vessel.  (5/21/15 Tr. Vol. II at 218:2–7)

only one occasion where he did packing work on a Copes valve, Mr. Hillyer testified that he

"frequently" repacked valves. (*Id.* at 35:16–36:6; 5/21/15 Tr. Vol. II at 212:12–25) With respect

to repacking valves, Mr. Hillyer stated:

> The valves that [routinely operate] had a greater chance of leaking. And we
> [removed and replaced packing] frequently. Sometimes we were able to shut
> down one side of the engine room and isolate the component so we could fix it.
> Otherwise, we waited until we were in port.

(5/20/15 Video Tr. at 35:16–6)

Moreover, Copes admits that certain valves contained asbestos-containing gaskets until

1986.[16] (D.I. 133, Ex. 3 at 9) A Copes representative also testified in a separate action that while

he worked at Copes from 1974 to 1981, all Copes valves contained asbestos. (*Id.*, Ex. 4 at 37)

Although Copes is not liable for component products it did not manufacture or sell, an issue of

fact remains with respect to whether Mr. Hillyer was exposed to original asbestos-containing

Copes gaskets and packing. *See Gitto v. A.W. Chesterton Co.*, Civil Action No. 07-73417, 2010

WL 3322714, at *4 (E.D. Pa. Aug. 19, 2010). Therefore, Copes' motion for summary judgment

should be denied with respect to the negligence, strict liability, and loss of consortium claims.

As discussed at § IV(A), *supra*, Copes' motion for summary judgment should be granted with

respect to the punitive damages claim.

**D. Crane**

Crane's motion for summary judgment should be granted-in-part and denied-in-part.

Crane argues that exposure to a Crane product was not a substantial factor in causing his alleged

injuries because Mr. Hillyer did not testify that he was exposed to any asbestos-containing Crane

product. (D.I. 126 at 5) Moreover, Crane is not responsible for asbestos-containing materials

---

[16] Copes states in its interrogatory responses that "certain" Copes products may have
incorporated asbestos components manufactured by third parties until 1986. (D.I. 133, Ex. 3 at
9)

used with Crane products that were not manufactured by Crane. (*Id.* at 5–8) Plaintiffs respond

that Crane valves contained asbestos, and the evidence indicates that Mr. Hillyer was exposed to

Crane's products for a total of nine years aboard the USS George Washington Carver and the

USS Tinosa. (D.I. 132 at 5–8) Such exposure satisfies the substantial factor causation standard.

(*Id.* at 7–8) Regardless, Plaintiffs believe Crane is liable for failure to warn because Plaintiffs

have established that at least some of Crane's products originally came with asbestos-containing

components. (*Id.* at 8–15)

Plaintiffs must show that Mr. Hillyer was exposed to a Crane product, and that the

exposure was a substantial factor in causing his alleged injuries. *Lindstrom v. A-C Prod. Liab.*

*Trust*, 424 F.3d 488, 492 (6th Cir. 2005) (citing *Stark v. Armstrong World Indus., Inc.*, 21 F.

App'x 371, 375 (6th Cir. 2001)). The record reflects that Mr. Hillyer was exposed to Crane

valves. As discussed at § IV(C), *supra*, although he could not remember specific quantities, Mr.

Hillyer testified that he frequently repacked valves. Although he only worked on Crane valves

during the upkeep period between patrols every three months on the USS George Washington

Carver, Mr. Hillyer testified that he "repacked lots of valves." (5/21/15 Tr. Vol. II at 145:15–

154:13) With respect to the USS Tinosa, Mr. Hillyer testified that he worked on "a few" valves,

and some of them may have been Crane valves. (*Id.* at 164:21–165:5)

Additionally, like Copes, Crane admits in its interrogatory responses that certain original

Crane valves contained asbestos. (D.I. 132, Ex. 4 at 6–9) Although Mr. Hillyer did not know

who manufactured the gasket and packing material that he replaced on Crane valves, the gasket

and packing manufacturer is a fact question for the jury. The court is required to view the facts

in the light most favorable to Plaintiffs, and the court cannot speculate whether Plaintiff was

exposed to original asbestos-containing components, nor whether another company

manufactured the asbestos-containing components to which Mr. Hillyer alleges exposure. Therefore, Crane's motion for summary judgment with respect to the negligence, strict liability, and loss of consortium claims should be denied. As discussed at § IV(A), *supra*, Crane's motion for summary judgment should be granted with respect to the punitive damages claim.

### E. Sarco

Sarco's motion for summary judgment should be granted. Sarco argues that there is no evidence that the gaskets used on the steam trap flange connections were made, sold, or placed into the stream of commerce by Sarco. (D.I. 119 at 1) Accordingly, Sarco is not liable for those products. (*Id.* at 1–2) If Sarco could be held liable for those products, Mr. Hillyer's alleged exposure was not a substantial factor in causing his alleged injuries. (*Id.* at 2) Plaintiffs respond that Mr. Hillyer's regular maintenance of Sarco steam traps creates at least a genuine issue of material fact as to whether such exposure was a substantial factor in causing his alleged injuries. (D.I. 135 at 6) Regardless, Plaintiffs argue that Sarco has a duty to warn because it was foreseeable that users would replace gaskets on the steam trap with other asbestos-containing gaskets. (*Id.* at 8–9)

While product identification is a threshold matter, summary judgment is warranted where there is no evidence demonstrating that a manufacturer supplied the asbestos-containing component parts to which a plaintiff alleges exposure. *See Dalton v. 3M Co.*, Civil Action No. 10-113-SLR-SRF, 2013 WL 4886658, at *11 (D. Del. Sept. 12, 2013), *report and recommendation adopted*, 2013 WL 5486813 (D. Del. Oct. 1, 2013) (applying the bare metal defense to shield a manufacturer from liability in an asbestos case).

Mr. Hillyer only identified working with one or two Sarco steam traps on the evaporator of the USS George Washington Carver. (5/20/15 Video Tr. at 44:21–25; 5/21/15 Tr. Vol. II at

219:6–13) Mr. Hillyer could not recall how many times he worked on the Sarco steam traps. (5/21/15 Tr. Vol. II at 219:17–19) He testified that the steam traps were made of steel, and he only associated asbestos with the flange gasket that attached the steam trap to the brine piping. (*Id*. at 220:5–221:9) He did not know who manufactured the gasket material, but he would have used Garlock materials to replace it. (*Id*. at 221:10–222:20)

Sarco admits to manufacturing asbestos-containing "pressure reducing valves," "temperature control valves," "bucket traps," and "flow traps." (D.I. 135, Ex. 3 at 7) However, there is no evidence that the steam trap Mr. Hillyer identified falls into one of those categories. Additionally, Plaintiffs cite to a 2007 analysis of a recovered asbestos-containing Sarco steam trap, but the analysis does not indicate when that steam trap was manufactured, or if it was the same type to which Mr. Hillyer alleges exposure. (*Id*., Ex. 4) If Mr. Hillyer replaced original asbestos-containing material on Sarco steam traps, his speculative testimony with respect to work on only one or two Sarco steam traps is insufficient to create an inference that such exposure was a substantial factor in causing his alleged injuries. Moreover, Plaintiffs' counsel acknowledged the difficulty in inferring more than *de minimis* exposure on the present record. (8/17/16 Tr. at 46:15–23)

Sarco's admissions do not indicate that all Sarco steam traps contained asbestos, or that the particular steam trap Mr. Hillyer alleges exposure to contained asbestos. Plaintiffs "cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference. Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No., 12-1635-SLR-SRF, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014). Plaintiffs have not shown that Mr. Hillyer was exposed to an asbestos-

containing Sarco product. Therefore, Sarco's motion for summary judgment should be granted.

### F. ALS/Buffalo

ALS's motion for summary judgment should be granted. ALS argues that Plaintiffs fail to establish a prima facie case because Mr. Hillyer only worked on one Buffalo pump, which he speculates may have contained an asbestos gasket. (D.I. 130 at 7) There is no evidence that the pump actually contained asbestos, much less that the asbestos was supplied by Buffalo. (*Id.* at 7–8) Plaintiffs believe substantial issues of material fact exist with respect to causation, Buffalo's liability for asbestos-containing products, and Buffalo's willful and wanton conduct. (D.I. 134 at 2)

Mr. Hillyer testified that he only worked on one Buffalo pump, and he was not certain it was actually manufactured by Buffalo.[17] (5/21/15 Tr. Vol. II at 293:16–23) Accordingly, his product identification testimony is merely speculative. Plaintiffs "cannot create a genuine issue of material fact through mere speculation...." *In re Asbestos Litig. (Dumas)*, Civil Action No. 13-229-SLR-SRF, 2015 WL 5766460, at *10 (D. Del. Sept. 30, 2015), *report and recommendation adopted*, 2016 WL 310724 (D. Del. Jan. 26, 2016).

Moreover, Mr. Hillyer specifically testified that he did not do work to Buffalo pumps associated with the lithium bromide system. (5/21/15 Tr. Vol. II at 265:2–7) ALS submits two Affidavits indicating that the only Buffalo pumps on the USS George Washington Carver were those associated with the lithium bromide system. (D.I. 145, Exs. A, B) Commander James P. Delaney (Ret.) and Martin K. Kraft affirmed that the Buffalo pumps associated with the lithium bromide system did not utilize asbestos-containing gaskets or packing. (*Id.*, Ex. A at ¶¶ 10–13, Ex. B at ¶ 8) Furthermore, the pumps were not externally insulated once installed aboard the

---

[17] Although identified, Mr. Hillyer testified that he did not do any work to the Buffalo pumps associated with the lithium bromide system. (5/21/15 Tr. Vol. II at 265:2–7)

ships. (*Id.*, Ex. B at ¶ 9)

Because Mr. Hillyer testified that he did not work on Buffalo pumps associated with the lithium bromide system, and the only Buffalo pumps on the USS George Washington Carver were associated with that system, there is no evidence that Mr. Hillyer was exposed to any Buffalo pump, let alone an asbestos-containing Buffalo pump.  "While all reasonable inferences must be drawn in favor of the non-movant, [Plaintiffs] cannot create a genuine issue of material fact through...the building of inference upon inference.  Instead, inferences must be supported by facts in the record, not by speculation or conjecture." *Walkup v. Air & Liquid Sys. Corp.*, Civil Action No., 12-1635-SLR-SRF, 2014 WL 2514353, at *6 (D. Del. June 4, 2014), *report and recommendation adopted*, 2014 WL 4447568 (D. Del. Sept. 8, 2014) (citation omitted).  As such, Plaintiffs have not shown "'a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural.'" *Abbay v. Armstrong Int'l, Inc.*, E.D. PA Civil Action No. 2:10-CV-83248-ER, 2012 WL 975837, at *1 n.1 (E.D. Pa. Feb. 29, 2012).  Therefore, ALS's motion for summary judgment should be granted.

## V.  CONCLUSION

For the foregoing reasons, and as shown by the chart, *infra*, I recommend that the court grant-in-part and deny-in-part the motions filed by MSA (D.I. 112), Copes (D.I. 116), and Crane (D.I. 125), and grant the motions filed by Sarco (D.I. 118), and ALS (D.I. 129).

| Defendant | Motion for Summary Judgment |
| --- | --- |
| Mine Safety Appliances Company | GRANT-IN-PART, DENY-IN-PART |
| Copes-Vulcan Inc. | GRANT-IN-PART, DENY-IN-PART |
| Crane Co. | GRANT-IN-PART, DENY-IN-PART |
| Spirax Sarco Inc. | GRANT |
| Air & Liquid Systems Corporation | GRANT |

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: August 19 , 2016

Sherry R. Fallon
United States Magistrate Judge